Hearing Date and Time: October 16, 2019
Response Deadline: October 9. 2019

KEVIN KERVENG TUNG, P.C.
Andrew D. Solomon, Esq.
136-20 38th Avenue, Suite 3D
Flushing, New York 11354
Tel: 718-939-4633
Fax: 718-939-4468
Email: asolomon@kktlawfirm.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re: Xue Hua Xu and Wenjue Qiu,
      Debtors.

                                             **Case No. 1-18-43282-nhl**
                                             **Chapter 7**

-------------------------------------------------------------x

## DEBTORS' OBJECTION TO PROOF OF CLAIM
## NO. 2 (AND NO. 9), FILED BY YIN XIAO SUN

**THIS OBJECTION SEEKS TO MODIFY, RECLASSIFY, DISALLOW, OR EXPUNGE YOUR PROOF OF CLAIM.**

Mr. Xue Hua Xu (SSN 1111, "Debtor Xu") and Ms. Wenjue Qiu (SSN 6045, "Debtor Qiu") (together, the "Debtors") hereby submit their objection (the "Objection") seeking entry of an order disallowing and expunging the claim of Yin Xiao Sun ("Mr. Sun"). Mr. Sun filed Proof of Claim Number 2 (the "Claim"). Mr. Sun also filed the same Proof of Claim as Claim Number 9. In support of their Objection, the Debtors respectfully state as follows:

### JURISDICTION

1.     The United States Bankruptcy Court for the Eastern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 157.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3. The bases for the relief requested are section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

4. The Debtors seek entry of an order, pursuant to section 502 the Bankruptcy Code and Bankruptcy Rule 3007, disallowing and expunging Mr. Sun's claim because Debtor Xu did not incur a debt to Mr. Sun.

## BACKGROUND

5. On June 4, 2018, the Debtors, who are husband and wife, filed a petition for relief under chapter 7 of the Bankruptcy Code. The Debtors filed for chapter 7 primarily because the husband's restaurant had failed.

6. From October 2015 to January 2018, Debtor Xu was the sole owner of Shanghai Gourmet Food Inc., a New York corporation (the "Restaurant Corp."), which operated a restaurant in Levittown, New York. Debtor Xu opened the restaurant in October 2015. The restaurant began losing money in 2017 and was short of cash. In June 2017, Debtor Xu began looking for investors to purchase equity in the Restaurant Corp. See Objection Exhibit A: Debtor's Affidavit, paragraph 2.

7. In January 2018, Yin Xiao Sun agreed to pay $40,000 for 49% of the common shares of the Restaurant Corp. See Debtor's Affidavit, paragraph 5. On January 31, 2018, Mr. Sun gave Debtor Xu $40,000. Debtor Xu gave Mr. Sun a receipt written in Chinese (the "Receipt"). According to the translation provided by Mr. Sun, the Receipt states in part: "…$40,000 USD received today from Yin Xiao Sun will be used to invest in shareholders for Shanghai Gourmet." See Mr. Sun's Proof of Claim, Exhibit B: Receipt.

8. In February 2018, Mr. Sun began working full-time at the restaurant. During his first few weeks at the restaurant Mr. Sun took the following actions: (a) he changed the menu from Shanghai style to Sichuan style; (b) he fired the head chef and other cooking staff and hired a new cooking staff; and (c) he purchased new cooking equipment and supplies at a cost of about $10,000. See Debtor's Affidavit, paragraph 7.

9. Mr. Sun's changes were not successful – the restaurant continued to lose money. The restaurant lost about $27,000 during the month of February 2018. See Debtor's Affidavit, paragraph 8.

10. Mr. Sun managed the restaurant for about six weeks. On March 16, 2018, the restaurant paid him $1750 because he said he needed money to pay some personal bills. After collecting that payment, Mr. Sun never returned to work at the restaurant. See Debtor's Affidavit, paragraph 9. On April 2, 2018, Mr. Sun's attorney sent Debtor Xu a letter demanding the return of Mr. Sun's $40,000. See Mr. Sun's Proof of Claim, Exhibit C. Debtor Xu refused to return the money. See Mr. Sun's Proof of Claim, Exhibit D.

11. In March 2018, the restaurant lost about $9000. Debtor Xu was forced to close the restaurant on April 22, 2018. See Debtor's Affidavit, paragraph 11.

12. In May 2018, Mr. Sun filed a lawsuit against the Restaurant Corp. and Debtor Xu demanding the return of $40,000. See Mr. Sun's Proof of Claim.

13. Mr. Sun's $40,000 claim is actually an equity investment gone bad.

## BASIS FOR RELIEF REQUESTED

14. Pursuant to section 502(a) of the Bankruptcy Code, a filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. 502(a). "The party objecting has the initial burden of going forward and of introducing evidence sufficient to rebut the presumption

of validity." In Re Herz, 556 B.R. 537, 542 (Bankr. E.D.N.Y. 2016), quoting from In re Koloch, 416 B.R. 375, 378 (Bankr. E.D.N.Y. 2009). "Once met, the burden of production shifts to the claimant, who must prove the validity and amount of the claim by a preponderance of the evidence." In re Frederes, 98 B.R. 165, 166 (Bankr. W.D.N.Y. 1989). "Although the burden of production shifts between the parties, the burden of persuasion is always on the claimant." Id., at 166-167.

15. Mr. Sun introduced his own evidence that rebuts the presumption of validity of his claim. First, in his lawsuit Complaint, Mr. Sun states that he "determined to join the Defendant Company as a shareholder instead of purchasing the whole restaurant." Second, Mr. Sun states in his Complaint that he "intended to acquire 49% of the outstanding shares of Defendant Company." See Mr. Sun's Verified Complaint, paragraph 7. Third, Mr. Sun produced the Receipt, which essentially states that Mr. Sun paid $40,000 to buy shares in the Restaurant Corp. Mr. Sun clearly intended to become and indeed became a shareholder of the Restaurant Corp.

16. Mr. Sun asserts that he did not sign a share transfer agreement on the date he paid the money because he was unsure what his percentage of ownership should be. Alternatively, Debtor Xu contends that the agreement was not signed because he forgot to bring the stock certificate book and because the lawyer had not prepared the agreement. See Debtor's Affidavit, paragraph 6. It is quite possible that the attorney had not prepared a stock transfer agreement for 49% of the shares (a "49% Transfer Agreement"). Mr. Sun did not attach such an agreement to his Complaint. The only agreement that Mr. Sun produced was a business sale agreement for a 100% sale (the "100% Sale Agreement"). The attorney might not have had sufficient time to prepare a 49% Transfer Agreement because the terms of the deal changed after Lei suddenly

dropped out. See Mr. Sun's Complaint, paragraph 7 and Mr. Sun's Proof of Claim, Exhibit A: Contract for the Sale of Business.

17.   Mr. Sun asserts that there was no "meeting of the minds" on a deal because the parties could not agree on Mr. Sun's ownership percentage. According to Mr. Sun, he expected a percentage different from 49% (presumably higher) because an "inventory adjustment" was not done. However, according to Debtor Xu, the parties agreed on 49% because their lawyer said that a change of control would require landlord approval. See Debtor's Affidavit, paragraph 5. There was a sufficient meeting of the minds to form a contract. Debtor Xu got what he wanted - a $40,000 cash infusion and a partner with restaurant management experience. And Mr. Sun got what he wanted – substantial ownership in and managerial control of the restaurant. Debtor Xu had agreed to give Mr. Sun 49%. Therefore, Mr. Sun knew he was getting at least 49%; his percentage could only go up if he received his requested inventory adjustment. And in the end, the exact percentage of ownership did not matter – Mr. Sun's entire investment was lost.

Mr. Sun purchased common shares of the Restaurant Corp. Common shareholders rank the lowest in the priority of claims on the assets of a corporation. "Finally, after all creditors have been paid, provision may be made for stockholders. When the debtor is insolvent, the stockholders, as such, receive nothing." In re Stirling Homex Corp., 579 F.2d 206, 211 (2d Cir. 1978). Mr. Sun hoped for equity-type profits and he assumed equity-type risks. He must not be given a refund simply because he did not know his exact ownership percentage (49%, 54%, or 59% of nothing equals nothing).

In Stirling, the Second Circuit quoted from a case decided many years ago by the Eighth Circuit: "When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and

all attempts of that kind should be viewed with suspicion." Id. at 213, quoting from *Newton National Bank v. Newbegin*, 74 F. 135, 140 (8th Cir. 1896).

18. Mr. Sun's ownership interest was sufficient to allow him to take over as restaurant manager. Mr. Sun managed the restaurant for six weeks, made major changes, and collected one paycheck. See Debtor's Affidavit, paragraphs 7-9. Once he realized that he could not turn around the restaurant's fortunes, he bailed. Mr. Sun is asking for a do-over - he made a bad investment and now he wants his money back. The restaurant used Mr. Sun's investment to buy new equipment and supplies (at Mr. Sun's behest) and to pay normal operating expenses. See Debtor's Affidavit, paragraph 7-8. Mr. Sun knew the restaurant needed his cash to pay its bills. See Debtor's Affidavit, paragraph 3.

19. Mr. Sun's Proof of Claim states that the basis of his claim is an "unreturned deposit for the prospective purchase of business." Mr. Sun did not make a "deposit" - he paid the full price of $40,000. See Mr. Sun's Proof of Claim, Verified Complaint, paragraph 7. Nowhere does Mr. Sun allege that Debtor Xu agreed to a "trial period." Sometimes, a seller of a business will give the prospective buyer a trial period under which the buyer is given a few weeks to observe the performance of the business, and if the weekly revenue does not meet a preset target then the buyer can back out of the deal. Debtor Xu did not give Mr. Sun such a contingency, and Mr. Sun did not allege that one existed.

## UNJUST ENRICHMENT?

20. Mr. Sun argues that Debtor Xu was unjustly enriched by Mr. Sun's $40,000 payment; that Debtor Xu gave him nothing in return. But Debtor Xu did give Mr. Sun something - management control (which Mr. Sun accepted) and the right to share in 49% of the profits. Debtor Xu did not misappropriate Mr. Sun's money; he spent the money on restaurant expenses,

such as equipment, supplies, advertising, and salaries. Some of these expenditures were incurred by Mr. Sun. See Debtor's Affidavit, paragraphs 7-8.

21. The New York State Court of Appeals has stated that unjust enrichment is a "quasi-contract claim," which "contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." Georgia Malone & Co., Inc. v Rieder, 19 N.Y.3d 511, 516; 973 N.E.2d 743, 746; 950 N.Y.S.2d 333, 336 (N.Y. Ct. App. 2012). "An unjust enrichment claim is rooted in 'the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another' (*Miller v Schloss*, 218 NY 400, 407, 113 NE 337 [1916]). Id., at 516. "Thus, in order to adequately plead such a claim, the plaintiff must allege 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered'" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182, 944 NE2d 1104, 919 NYS2d 465 [2011]. Id., at 516.

22. Mr. Sun invested in a restaurant. Mr. Sun had managed other restaurants before. See Debtor's Affidavit, paragraph 5. Debtor Xu told Mr. Sun that the restaurant was losing money before he made his investment. See Debtor's Affidavit, paragraph 3. Mr. Sun thought he could turn it around. When he failed to turn it around in six weeks, he quit.

No one forced Mr. Sun to invest in the Restaurant Corp. Lei backed out of the purchase; Mr. Sun could have done the same. He paid in full knowing that he had not signed an agreement or obtained a stock certificate. He was at his lawyer's office when he made the payment; what advice, if any, did the lawyer provide? Possibly, Mr. Sun, eager to take advantage of a great opportunity (in his mind), was willing to pay the money without executing a formal contract.

23. Mr. Sun knowingly and willingly made an investment that turned out bad. He pursued his investment for six weeks, but walked away once he realized that the situation was hopeless. Mr. Sun's claim of unjust enrichment is not valid; there was no injustice here. Caveat emptor.

## **RESERVATION OF RIGHTS**

24. This Objection is limited to the grounds stated above. Accordingly, it is without prejudice to the rights of the Debtors or any other party in interest to object to Mr. Sun's claim (to the extent not disallowed or expunged pursuant to this Objection) on any grounds whatsoever, and the Debtors expressly reserve all further substantive or procedural objections they may have.

## **NOTICE**

25. The Debtors have provided notice by mail of this Objection to: (a) Mr. Sun's counsel, (b) the trustee, and (c) the trustee's counsel. Persons who have filed a notice of appearance in accordance with Bankruptcy Rule 2002 will receive notice through ECF.

**WHEREFORE**, the Debtors respectfully request that the relief requested herein be granted and this Bankruptcy Court enter an order, substantially in the form annexed hereto as Exhibit C, and grant such other and further relief as is just and proper.

Dated: August 17, 2019 (Flushing, New York)

**KEVIN KERVENG TUNG, P.C.**
Counsel for the Debtors


By: /s/ Andrew D. Solomon
136-20 38th Avenue, Suite 3D
Flushing, New York 11354
Tel: 718-939-4633
Fax: 718-939-4468
Email: asolomon@kktlawfirm.com